## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

KENNETH GUNTER,                    *
                                   *
        Plaintiff,                 *
                                   *
vs.                                *    CIVIL ACTION NO. 20-00154-B
                                   *
KILOLO KIJAKAZI,[1]                *
Acting Commissioner of             *
Social Security,                   *
                                   *
        Defendant.                 *

## ORDER

Plaintiff Kenneth Gunter[2] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On April 1, 2021, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of

---

[1] The Court takes judicial notice that Kilolo Kijakazi is now the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d), the Clerk is **DIRECTED** to substitute Kilolo Kijakazi, Acting Commissioner of Social Security, as the Defendant in this case.

[2] In Plaintiff's filings in this Court, his name is listed as "Kenneth Gunter". (See, e.g., Doc. 1). However, the Social Security records list Plaintiff's name as "Kenneith Gunter Jr." (See Doc. 14).

judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 22). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History[3]

Plaintiff filed his applications for benefits on May 12, 2017, alleging disability beginning January 1, 2016, based on gout, asthma, arthritis, and back problems. (Doc. 14 at 187-201, 210, 214). Plaintiff's applications were denied at the initial stage. (Id. at 104, 116). Upon timely request, he was granted an administrative hearing, which was held on September 10, 2018. (Id. at 49, 131, 149). At the hearing, Plaintiff, who was represented by counsel, appeared by video and provided testimony related to his claims. (Id. at 49-67, 72-74). A vocational expert ("VE") also testified at the hearing. (Id. at 66-71). On April 25, 2019, the Administrative Law Judge ("ALJ") issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 18-29). The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision dated April 25, 2019, became the final decision of the Commissioner. (Id. at 4). Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now

---

[3] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

1. **Whether the ALJ erred by failing to fully and fairly develop the record with respect to Plaintiff's alleged back pain?**

2. **Whether the ALJ properly considered the combination of Plaintiff's impairments?**

## III.  Factual Background

Plaintiff was born on July 3, 1960, and was fifty-eight years of age at the time of his administrative hearing in September 2018. (Doc. 14 at 54).  At that hearing, Plaintiff testified that he was 5'8, weighed approximately 135 pounds, and lived in a house with his wife, who is disabled.  (Id.).  Plaintiff graduated high school and attended three years of college.  (Id. at 55, 215).  He last worked as a greenskeeper at a country club in October 2016, and he previously worked as a lumber inspector, sawmill worker, and maintenance worker.  (Id. at 55-58, 68, 222, 224-27).  Plaintiff has a driver's license and is able to drive.  (Id. at 55, 234).

Plaintiff testified that he can no longer work because of depression, anxiety, gout, asthma, and lower back pain.  (Id. at 59-61, 63).  Plaintiff takes medication as needed for gout flares, which he reported occur approximately once a month depending on his diet.  (Id. at 59-60).  According to Plaintiff, he is not on preventative medication for gout; however, he has received

injections for gout pain. (Id. at 60, 65, 320, 358). Plaintiff's lower back pain has been treated with pain medication, muscle relaxers, and occasional injections. (Id. at 326, 350, 399).

Plaintiff has also been diagnosed with major depressive disorder, has received counseling, and has been prescribed Paxil, Trazodone, and Vistaril for depression and anxiety symptoms. (Id. at 62-63, 428, 472). Additionally, Plaintiff experiences asthma flares and uses an inhaler as needed. (Id. at 59-60, 508).

IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

## V.    Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his disability.  See 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he is not engaged in substantial gainful activity.  Carpenter v. Comm'r of Soc. Sec.,

614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).[5]  The second step requires the claimant to prove that he has a severe impairment or combination of impairments.  Id.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  Id.  If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four.  Id.  A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his past relevant work.  Carpenter, 614 F. App'x at 486.

If a claimant meets his burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and

---

[5] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  11th Cir. R. 36-2; Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.
1985) (per curiam).  If the Commissioner can demonstrate that there
are such jobs the claimant can perform, the burden then shifts
back to the claimant to prove his inability to perform those jobs
in order to be found disabled.  Hale v. Bowen, 831 F.2d 1007, 1011
(11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564
(11th Cir. 1985)).

## VI.   The ALJ's Findings

In the case *sub judice*, the ALJ found that Plaintiff met the
insured status requirements of the Social Security Act through
September 30, 2017,[6] and has not engaged in substantial gainful
activity since his alleged onset date of January 1, 2016.[7]  (Doc.
14 at 21).  The ALJ further found that Plaintiff has the severe
impairments of asthma, intermittent gout, possible lumbar injury,
and depression, and the non-severe impairments of hypertension and

---

[6] To be eligible for disability insurance benefits, "a claimant
must show that he became disabled prior to the expiration of his
disability insured status."  Alcott v. Comm'r of Soc. Sec., 2013
U.S. Dist. LEXIS 23858, at *5 n.4, 2013 WL 646173, at *2 n.4 (M.D.
Fla. Feb. 21, 2013).  Thus, to be entitled to disability insurance
benefits, Plaintiff bears the burden of proving that he satisfied
the regulatory definition of disability as of September 30, 2017.
See Chaney-Everett v. Astrue, 839 F. Supp. 2d 1291, 1296 (S.D.
Fla.  2012).    For  purposes  of  Plaintiff's  application  for
supplemental security income, the relevant period extends to April
25, 2019, the date of the ALJ's decision.  See id.

[7] The  record  reflects  that  Plaintiff  worked  full-time  as  a
greenskeeper until October 2016.  (See Doc. 14 at 58, 207-08, 214-
15, 222-23).

hyperlipidemia.   (Id.).   The ALJ determined that Plaintiff's
impairments, when considered individually and in combination, do
not meet or medically equal the severity of any of the listed
impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.
§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and
416.926).   (Id. at 21-22).

The ALJ further found that Plaintiff has the RFC to perform
a range of medium work with the following limitations: he can lift
and carry up to fifty pounds occasionally and up to twenty-five
pounds frequently and can push and pull within those same
exertional limits; he can stand or walk for about six hours
altogether and can sit for at least six hours of an eight-hour
workday; he can frequently stoop, crouch, kneel, crawl, and climb,
but cannot climb ladders, ropes, or scaffolding; he cannot perform
tasks involving the operation of vibrating tools or equipment or
the operation of foot pedals/controls; he cannot perform tasks
involving concentrated exposure to pulmonary irritants such as
dust, gases, fumes, or smoke; he cannot perform tasks involving
exposure to temperature or humidity extremes or workplace hazards
such as unprotected heights or dangerous moving machinery; he can
understand and carry out short, simple instructions consistent
with the performance of simple, unskilled work of a routine,
repetitive nature; he can make simple work-related decisions but
cannot carry out any complex instructions or engage in any long-

term planning, negotiation, or independent goal-setting; he can tolerate occasional interaction with supervisors and co-workers but no interaction with the general public; and he can tolerate only minor, infrequent changes within the workplace.  (Id. at 22-27).

Based upon the testimony of the VE and the record before him, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a sawmill worker, maintenance mechanic helper, building maintenance repairer, or greenskeeper, but that he can perform other jobs that exist in significant numbers in the national economy, such as hand packager, industrial cleaner, and cook helper.  (Id. at 27-28).  Thus, the ALJ found that Plaintiff is not disabled.  (Id. at 28).

## VII. <u>Discussion</u>

### 1. **The ALJ did not fail to fully and fairly develop the record with respect to Plaintiff's alleged back pain.**

Plaintiff first argues that the ALJ did not fulfill his duty to develop the record because he failed to order consultative x-rays of Plaintiff's lumbar spine.  Plaintiff contends that he was "clearly unable to pay for radiological examinations" due to poverty and lack of insurance. (Doc. 16 at 8).  He notes that the ALJ found that he has the severe impairment of "possible lumbar injury" and asserts that the ALJ "had the opportunity, ability, and duty to determine the source and extent" of that injury by

ordering radiology examinations but failed to do so.  (Id. at 7-8).[8]  The Commissioner counters that it was Plaintiff's own burden to produce evidence of his disability, and that the record contains sufficient evidence to support the ALJ's findings as to Plaintiff's lower back impairment and related functional limitations.  (Doc. 17 at 5-9).  Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

It is well-established that a hearing before an ALJ in a Social Security case is inquisitorial and not adversarial.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).  A claimant bears the burden of proving his disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record."  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram, 496 F.3d at 1269.  In fulfilling the duty to conduct a full and fair inquiry, the ALJ is required to order a consultative examination where the record establishes that such an

---

[8] Plaintiff states in passing that he "never had any consultative examinations of any kind," but he specifically argues that the ALJ failed to develop the record because he did not order radiology exams.  (See Doc. 16 at 6-8).  To the extent Plaintiff is also attempting to argue that the ALJ erred by failing to order a consultative medical examination by a physician, that argument is waived for lack of development.  See Bookman v. Comm'r of Soc. Sec., 490 F. App'x 314, 317 n.2 (11th Cir. 2012) (per curiam) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.") (quoting Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012)).

examination is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). However, the ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ to make an informed decision. Ingram, 496 F.3d at 1269. Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam). In evaluating the necessity for a remand, courts are "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Id. (citations and internal quotation marks omitted).

At Plaintiff's hearing in this matter, the ALJ asked Plaintiff: "Sir, do you have some problem now that you think would keep you from doing a job?" (Doc. 14 at 58). In response, Plaintiff referenced his depression, lack of energy, lack of motivation, gout, and asthma. (Id. at 59-60). Later, when prompted by his attorney, Plaintiff confirmed that his primary physician's records frequently mentioned lower back pain. (Id. at 63). Plaintiff testified that he worked as a lumber grader for fifteen years, "and eventually my back just always hurt, especially when I'd stop working or stop moving." (Id.). He estimated his lower back pain as a seven on a scale of ten. (Id. at 64).

11

At the end of the hearing, the ALJ asked whether there was any imaging of Plaintiff's lower back. [9]   (Id. at 71-72). Plaintiff's attorney responded that Plaintiff's doctor had not done any x-rays, but Plaintiff stated that his primary physician, Alex K. Curtis, M.D., had done a lower back x-ray and had recommended an MRI, which was never performed because Plaintiff lacked insurance and could not afford to pay for it.  (Id. at 72). Plaintiff's counsel advised the ALJ that he would contact Dr. Curtis's office to check whether it had any x-ray records to add to Plaintiff's file, but he noted that when his office had previously requested records from Dr. Curtis's office, the records did not include any x-ray results.  (Id. at 72-73).  The ALJ responded: "Well, that would probably be good because I don't know – right now I don't really have any back impairment that I can nail down."  (Id. at 73).  The ALJ also suggested that if no x-ray was on file, Plaintiff could obtain a new x-ray through Dr. Curtis's office.  (Id.).  The ALJ advised that he would hold the record open for any such evidence, and Plaintiff's counsel voiced his agreement with that course of action.  (Id.).  No imaging of Plaintiff's lower back was ever submitted.

Based on the foregoing, it is clear that Plaintiff and his attorney had ample opportunity to present to the ALJ the precise

---

[9] Plaintiff's medical records do not contain any radiology results for Plaintiff's lower back.  (See Doc. 14 at 291-509).

issue they now raise before this Court, yet they failed to do so. Despite the ALJ's specific reference to the lack of lower back imaging and indication that x-rays could potentially be helpful, neither Plaintiff nor his counsel suggested to the ALJ, as they now argue to this Court, that Plaintiff was "clearly unable to pay for radiological examinations." (See Doc. 16 at 8). On the contrary, Plaintiff told the ALJ that a lower back x-ray *had* been done by Dr. Curtis, but that he could not afford to pay out-of-pocket for an MRI. (Doc. 14 at 72). When the ALJ suggested that Plaintiff's counsel either contact Fitz-Gerald Clinic (where Plaintiff was treated by Dr. Curtis) to obtain record of the existing x-ray or that Plaintiff obtain a new x-ray from Fitz-Gerald Clinic to submit as evidence, counsel indicated his agreement. (See id. at 73). At no point did either Plaintiff or his counsel suggest that Plaintiff would be unable to obtain an x-ray through Fitz-Gerald Clinic. (See id.). Nor did they request a consultative examination.

"In this Circuit, the general rule is that '[a]n argument not raised in an administrative hearing cannot be raised on appeal.'" Whisenant v. Astrue, 2010 U.S. Dist. LEXIS 50364, at *13, 2010 WL 2034698, at *5 (M.D. Fla. Apr. 27, 2010) (quoting Alacare Home Health Servs., Inc. v. Sullivan, 891 F.2d 850, 855 n.5 (11th Cir. 1990), abrogated on other grounds by Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145 (2013)); cf. Sims v. Apfel, 530 U.S. 103, 105–

07 (2000) (holding that a claimant does not waive judicial review of an issue by failing to raise it before the Appeals Council, but explicitly stating that the issue of whether a claimant must exhaust issues before the ALJ was not before the Court); Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) (declining to extend the rationale of Sims to excuse the failure to raise an issue before the ALJ). Although the ALJ had a duty to develop a full and fair record in this case, the proper time for Plaintiff or his counsel to assert Plaintiff's inability to pay for x-rays, request consultative x-rays of Plaintiff's lower back, or object to the sufficiency of the existing record, was at the hearing while the subject of lower back imaging was being discussed. Arguably, their failure to do so precludes them from raising the argument before this Court. See Turner v. Astrue, 2009 U.S. Dist. LEXIS 85938, at *16, 2009 WL 3048561, at *5 (M.D. Fla. Sept. 21, 2009).[10]

In any event, the record does not establish that x-rays of Plaintiff's lumbar spine were necessary to enable the ALJ to make an informed decision. The medical evidence includes the records

---

[10] The Court notes that Plaintiff was able to have cardiovascular imaging performed at Fitz-Gerald Clinic as recently as May 25, 2017, despite having no insurance. (See Doc. 14 at 374). The Court further notes that while Plaintiff points to his lack of insurance as the reason he did not obtain lower back imaging, West Alabama Mental Health Center arranged for him to meet with a benefit specialist to apply for insurance in February or March 2018, but Plaintiff failed to keep the scheduled appointment. (See id. at 414-15).

of no less than seventeen dates between March 2016 and June 2018 on which Plaintiff received treatment at Fitz-Gerald Clinic. (See Doc. 14 at 318, 322, 327, 332, 338, 344, 348, 355, 359, 364, 370, 379, 383, 387, 396, 400, 505). During said visits, Plaintiff often complained of pain in his lower back and was variously assessed with "lower backache", "backache", "low back pain", "lumbago", and "muscle spasm". (See id. at 325, 330, 332-33, 335, 342, 344, 347, 349-50, 358-59, 361, 363-64, 366, 370-72, 382-83, 386-87, 390, 396-97, 399-403, 507). Physical examinations, including of Plaintiff's back, were performed during each of those seventeen visits. Ten such examinations revealed tenderness on palpation, as well as muscle spasms and/or paraspinal muscle spasms, in Plaintiff's lower back. (See id. at 325, 345, 356, 365, 371, 380, 385, 388, 397, 401). There was also one finding of lumbosacral spine pain elicited by motion and one finding of limited range of motion. (Id. at 356, 401). The treatment records also reflect that Plaintiff consistently exhibited normal gait and stance, normal balance, no weakness of the thighs or ankles, and no sensory abnormalities. (Id. at 320, 325, 330, 334, 341, 345, 349, 356, 362, 365, 371, 380, 385, 388, 397, 401, 506). Straight leg raise tests performed were negative bilaterally. (Id. at 365, 371). And, on a number of occasions, Plaintiff's back was noted as normal upon examination. (Id. at 320, 324, 330, 334, 341, 348, 356, 362, 505). His overall musculoskeletal and neurological examination

findings were also listed as normal during multiple visits.  (Id. at 320, 325, 330, 334, 341, 362, 385).  Significantly, on June 25, 2018, during his last recorded visit to Fitz-Gerald Clinic prior to the administrative hearing, Plaintiff did not complain of lower back pain, and it was not listed as an active problem.  (Id. at 505-06).  On that date, Dr. Curtis noted that Plaintiff's overall examination findings were normal, his back was normal, he had no costovertebral angle tenderness, his gait and stance were normal, and there were no sensory abnormalities.  (Id.).

Plaintiff was also examined during a visit to Bryan W. Whitfield Memorial Hospital's emergency department on May 22, 2017.  (Id. at 313-14).  Upon examination, it was noted that Plaintiff's back was normal, with no tenderness and normal range of motion, and Plaintiff exhibited no motor deficit, no sensory deficit, and normal reflexes.  (Id. at 314).

In addition to the above medical evidence, the ALJ had the benefit of Plaintiff's hearing testimony, including Plaintiff's statement that his back hurt "especially when [he would] *stop working* or *stop moving*."  (Id. at 63) (emphasis added).  The ALJ also had testimony and documentation concerning Plaintiff's activities of daily living, including Plaintiff's function report, which indicated that he had no issues with personal care, prepared his own meals, washed dishes, vacuumed, did laundry, walked, drove, went out unaccompanied, shopped, "tr[ied] not to lift anything too

16

heavy," could squat, could "bend ok" and could "touch [his] toes for the most part when bending," and tried not to walk too far due to foot pain. (See id. at 54, 231-56).

In sum, there were no evidentiary gaps in the record which resulted in unfairness or clear prejudice to Plaintiff, and it is speculative at best to assert that lower back imaging would have revealed evidence to advance Plaintiff's disability claim. As evidenced by the ALJ's thorough and well-supported discussion pertaining to Plaintiff's lower back complaints, the ALJ had sufficient evidence to make an informed decision regarding Plaintiff's lower back problems and resulting functional limitations based on the record before him. Accordingly, the ALJ did not breach his duty to fairly and fully develop the record by not ordering consultative radiology studies of Plaintiff's lower back.

### 2. The ALJ properly considered the combination of Plaintiff's impairments.

Plaintiff next contends that the ALJ failed to properly consider the combined effects of his multiple impairments. (Doc. 16 at 8-11). Specifically, Plaintiff argues that the ALJ's only reference to his combination of impairments was made in one boilerplate statement at step three of the sequential evaluation process, and that there is no indication the ALJ considered the combination of impairments in formulating his RFC assessment. (Id.

17

at 8).  Defendant counters that the ALJ sufficiently considered the combined effects of Plaintiff's impairments by addressing all of Plaintiff's alleged impairments and stating that they had been considered in combination.  (Doc. 17 at 11).

"Where a claimant has alleged several impairments, the [Commissioner] has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (per curiam).[11]  "This requirement is met if the ALJ states that the claimant 'did not have an impairment *or combination of impairments*' that would amount to a disability." Hamby v. Soc. Sec. Admin., Comm'r, 480 F. App'x 548, 550 (11th Cir. 2012) (per curiam) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (emphasis in original)).

A review of the ALJ's decision does not support Plaintiff's assertion that there is no indication that the ALJ considered the

---

[11] Social Security regulations provide, in relevant part:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process.

20 C.F.R. §§ 404.1523(c), 416.923(c).

combination of impairments in making his RFC assessment.   In his
decision, the ALJ recognized his duty to "consider all of the
claimant's impairments, including impairments that are not severe"
in making his RFC finding.   (Doc. 14 at 20).   In addition to
finding Plaintiff's asthma, intermittent gout, possible lumbar
injury, and depression to be severe impairments, the ALJ discussed
Plaintiff's hypertension and hyperlipidemia at step two and
explained why they caused "no more than slight limitation in the
claimant's ability for mental and/or physical work activity." (Id.
at 21).   The ALJ then stated that Plaintiff "does not have an
impairment or combination of impairments that meets or medically
equals the severity of" a listed impairment.   (Id.).   Subsequently,
in making his RFC finding, the ALJ stated he had "considered all
symptoms and the extent to which these symptoms can reasonably be
accepted as consistent with the objective medical evidence and
other evidence" of record.   (Id. at 23).   The ALJ also stated that
he had "considered the impact of other factors including medication
as well as nonsevere impairments."   (Id. at 26).   See Tuggerson-
Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951–52 (11th Cir.
2014) (per curiam) ("[I]t is apparent from the face of the ALJ's
decision and the RFC report relied upon by the ALJ that the ALJ
did, in fact, consider all medical evidence in combination in
concluding that Tuggerson–Brown was not disabled.   In performing
his analysis, the ALJ stated that he evaluated whether Tuggerson–

Brown had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence."); see also Jones, 941 F.2d at 1533 (finding ALJ's statement "that while [the claimant] 'has severe residuals of an injury to the left heel and multiple surgeries on that area,' he does not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4'" to "evidence[] consideration of the combined effects of [the claimant's] impairments") (emphasis in original).

More significantly, the ALJ's RFC assessment was accompanied by thorough discussions of each of Plaintiff's allegedly disabling conditions, including his gout, back pain, asthma, and depression. (See Doc. 14 at 23-26). The ALJ summarized Plaintiff's treatment history for these conditions, specified which accommodations were being included in the RFC to account for those conditions, and explained why those accommodations were being included. (See id.). The ALJ's detailed RFC assessment, which reflects limitations relating to each of Plaintiff's allegedly disabling conditions and includes substantial non-physical restrictions, demonstrates that the ALJ accounted for the combined effects of Plaintiff's physical and mental symptoms. See Moore v. Soc. Sec. Admin., Comm'r, 649 F. App'x 941, 944-45 (11th Cir. 2016) (per curiam) ("In her

decision, the administrative law judge stated that Moore did 'not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments.' Although the administrative law judge did not mention Moore's anxiety and depression when discussing the listing of impairments, those conditions did not warrant analysis because they did 'not cause more than minimal limitation in [Moore's] ability to perform basic mental work activities.'  The administrative law judge also 'careful[ly] considered . . . the entire record,' which included 'all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,' when assessing Moore's residual functional capacity.  The administrative law judge took into account Moore's complaints about, symptoms of, and treatment record for degenerative disc disease, pain in her back and shoulder, pulmonary disease, and mental impairments.   The written decision 'evidence[s] that [the administrative law judge] considered the combined effects of [Moore's] impairments.'") (citation omitted); Blake v. Astrue, 2009 U.S. Dist. LEXIS 88940, 2009 WL 3112101, at *9 (M.D. Fla. Sept. 28, 2009) (finding it "clear from the ALJ's analysis and wording that he was aware of all Plaintiff's impairments and considered them in combination as required" when the ALJ found that "'the claimant did not have an impairment or combination of impairments that met or medically equaled'" a listed

21

impairment and "[a]ll of the alleged impairments [were] discussed in the ALJ's decision"); <u>Mitchell v. Astrue</u>, 2012 U.S. Dist. LEXIS 152098, at *6-7, 2012 WL 5208495, at *3 (M.D. Ga. Sept. 25, 2012), <u>report and recommendation adopted</u>, 2012 U.S. Dist. LEXIS 150489, 2012 WL 5196523 (M.D. Ga. Oct. 19, 2012).

Finally, the Court notes that Plaintiff fails to identify any additional limitations that were warranted due to the combined effects of his impairments.  The Court finds that the ALJ's decision sufficiently demonstrates that the ALJ properly considered Plaintiff's impairments in combination.  As a result, Plaintiff's claim must fail.

**VIII.    <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** and **ORDERED** this **23rd** day of **September, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
